# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case. No. 17-CR-118 (RJL) |
| | ) | |
| BRYAN MOLES, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America respectfully submits this memorandum in aid of sentencing.

## I.   BACKGROUND

Defendant Bryan Moles was charged by complaint on June 2, 2017, with one violation of 18 U.S.C. Section 922(g)(3) (possession of a firearm by an unlawful user of a controlled substance), and one violation of 22 D.C. Code Section 4504.02 (unlawful transportation of a firearm).

The charges arose from conduct that occurred from May 30-31, 2017.  The defendant, an emergency room physician, drove from his home in western Pennsylvania to Washington, D.C., with two firearms in his car – a Bushmaster AR-15-style semi-automatic rifle, and a Glock 23 semi-automatic pistol.  He did not have a license to carry a firearm in the District of Columbia. On the drive to Washington, D.C., the defendant left several disturbing voicemail messages with an acquaintance, including indicating an intent to meet with President Trump.  The acquaintance reported the messages to local police in Pennsylvania, and the Metropolitan Police Department

1

("MPD") was contacted in the early morning of May 31, 2017, right around the time the defendant was checking into the Trump International Hotel with the weapons in his car.

When MPD officers arrived at the Trump International Hotel, they learned that the defendant had reported the weapons to hotel staff, and asked a parking valet to help keep his car secure because it contained firearms.   Police confiscated the weapons from the car using the key provided to the valet.   Both firearms were located in the passenger compartment of the car and neither was in a locked container.

MPD officers and agents from the United States Secret Service ("USSS") interviewed the defendant in his hotel room, and he confirmed that he had brought the firearms to Washington, D.C.   The defendant stated that he self-medicates with marijuana to treat his post-traumatic stress disorder.   He had a small amount of marijuana and a vaporizer in his hotel room.   The defendant was placed under arrest, and in a post-arrest interview, he again admitted that the firearms belonged to him and that he uses marijuana.   The defendant reported that he owned additional firearms located in a safe at his home in Pennsylvania (numerous firearms, and various marijuana paraphernalia, were later seized by law enforcement from the defendant's home, with his consent and pursuant to a pretrial release order).

Law enforcement learned that the defendant has suffered from mental illness in the past, and voluntarily admitted himself to a mental health and substance abuse treatment program in 2013.   He participated in a recovery program from 2013-2017, and worked during this time as an emergency room physician.   The recovery program ended in mid-April 2017, and the defendant began using marijuana again shortly thereafter.   Strange behavior ensued, including an incident at a hotel in Pittsburgh in late May where the defendant was in possession of marijuana and a

firearm (in a bag) and acted in a bizarre manner.   The defendant was treated at two hospital emergency rooms in Pennsylvania in May of 2017 and received psychological evaluations.

The defendant was released from custody on June 2, 2017, with pretrial release conditions including that he obtain mental health treatment at a Veteran's Affairs facility in Georgia, and that he stay away from Washington, D.C., except for court appearances and meetings with his attorney. He was admitted to the Veterans Affairs facility for mental health treatment several days later, but declined to abide by the doctor's prescription that he take medication to treat his mental health condition.   The defendant was reported to have intentionally damaged a water sprinkler in his hospital room, and he left the hospital against medical advice.   The evening before a hearing to consider revocation of pretrial release, the defendant posted photos on Facebook showing his location in Washington, in violation of the release conditions.   The defendant's pretrial release was revoked on June 15, 2017, and he has been detained since that date.

The grand jury returned an indictment on June 22, 2017, charging the defendant with the same two offenses -- violations of 18 U.S.C. Section 922(g)(3) (possession of a firearm by an unlawful user of a controlled substance) and 22 D.C. Code Section 4504.02 (unlawful transportation of a firearm).

On December 9, 2017, after a competency examination in the custody of the Bureau of Prisons, the Court determined with the consent of the parties that the defendant was competent to stand trial.

On July 3, 2018, the defendant pleaded guilty to count two of an information charging him which carrying a pistol without a license, in violation of 22 D.C. Code Section 4504(a)(1), pursuant to a plea agreement.   Sentencing is scheduled for September 7, 2018.

3

## II.      STATUTORY PENALTIES

A violation of 22 D.C. Code Section 4504(a)(1) carries a maximum sentence of not more than five years of imprisonment and a fine of not more than $12,500.   <u>See</u> D.C. Code Sections 4504(a)(1) and 3571.01.   A term of supervised release of three years must be imposed if the sentence is greater than one year of incarceration, and up to three years if the sentence is less than one year of incarceration.   24 D.C. Code Section 403.01.   A term of probation imposed in conjunction with a sentence suspended in whole or part may not exceed five years.   16 D.C. Code Section 710.

## III.     SENTENCING GUIDELINES CALCULATION

A violation of 22 D.C. Code Section 4504(a)(a) is classified under the D.C. Sentencing Guidelines in Offense Severity Group M8.   <u>See</u> D.C. Sentencing Guidelines, Appendix C at C-5 and Appendix A.   We are aware of no prior criminal convictions, and as a result the defendant has zero Criminal History Points under the D.C. Sentencing Guidelines and has a criminal history score of "A."   <u>Id</u>. at Appendix A – Master Grid.   The Estimated Sentencing Guideline Range under the D.C. Sentencing Guidelines is 6-24 months of imprisonment, with probation permissible. <u>Id</u>. The court may (1) suspend the imposition of sentence, (2) impose sentence and suspend the execution thereof, or (3) impose sentence and suspend the execution of a portion of the sentence. <u>See</u> 16 D.C. Code Section 710.

## IV.     LEGAL PRINCIPLES

The court should consider several factors when imposing sentence, along with the statutory penalties and voluntary sentencing guidelines calculation described above.   These factors include protection of society against wrongdoers, punishment, reformation, and deterrence of others.   <u>See</u>,

4

Spanziano v. Florida, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); Williams v. New York, 337 U.S. 241, 251 (1949).   Under 18 U.S.C. Section 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which include: (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.   18 U.S.C. Section 3553(a)(2).   The Section 3553(a) factors also include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute violated; (3) the kinds of sentences available; (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) restitution.

V.     **ANALYSIS**

Ensuring effective treatment of the defendant's mental health and substance abuse issues should be the paramount concern when imposing sentence in the unique circumstances of this case. Accordingly, the United States respectfully recommends that the Court impose a sentence of 24 months of incarceration, but suspend any additional period imprisonment after the date of sentencing.   The defendant should be placed on a five-year term of probation and a concurrent three-year term of supervised release.   Conditions on his release should include at least the following, among other standard conditions: (1) mental health treatment, in a manner that may be continually verified by the Probation Officer and supervised by the Court; (2) drug and alcohol testing and treatment, including for marijuana; (3) stay away from the District of Columbia, unless

entry is required to appear for a scheduled court appearance, or to meet with counsel or probation officers; (4) while in the District of Columbia for any authorized purpose, stay away from the area surrounding the White House Complex and the Trump International Hotel (ranging from I Street NW on the north, 9th Street NW on the east, Constitution Avenue on the south, and 18th Street NW on the west); (5) do not possess firearms or ammunition; and (6) comply with the law.   Such a sentence would be appropriate for several reasons.

First, a sentence at the high end of the guidelines range will reflect the seriousness of the offense.   The unlicensed carrying of firearms in the District of Columbia by a regular user of marijuana put the public at risk of danger.

Second, the defendant has no prior criminal convictions, and he has already served nearly 15 months in prison pending trial and sentencing.   Suspending the remainder of the term will appropriately account for this history.   Additionally, a lengthy term of supervised release and probation with the possibility of additional incarceration will incentivize the defendant to comply with the terms of his release, including mental health and substance abuse treatment.

Third, the recommended sentence will promote respect for the law, provide a just punishment, and afford adequate deterrence.   Such a sentence will help serve as an appropriate deterrent to others who may carry firearms in the District without a license.

Fourth, the recommended sentence is within the voluntary D.C. Sentencing Guidelines range, and that range should be given considerable weight as compliance with sentencing guidelines helps ensure fairness and consistency in sentencing.

Fifth, the record of this case makes clear that the defendant's crime was in large part a consequence of his untreated mental illness and substance abuse issues.   The requirement that the

defendant treat his medical and substance use issues is necessary to protect the public and rehabilitate the defendant.   These requirements will thereby serve core purposes of criminal sentencing.   The defendant should be required to participate in regular mental health and substance abuse treatment in a manner that can be verified by the Court; the defendant must agree that the Probation Officer may communicate with the treating physician for the purpose of ensuring the defendant's participation in treatment.

Sixth, a requirement to stay away from Washington, D.C., and the area around the White House and the Trump International Hotel, is appropriate to protect the public in light of the factual background discussed above.

## VI.   CONCLUSION

For these reasons, and any others presented at the sentencing hearing, the United States respectfully suggests that the Court impose sentence as outlined above.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY

By:   _____/S/_____
Michael Friedman
New York Bar No. 4297461
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6765

## **CERTIFICATE OF SERVICE**

I hereby certify that the attached document was served on Loui Itoh, Esq., via the Court's electronic filing system, on August 31, 2018.

_____/S/_____
Michael J. Friedman
